UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMES R., <br><br> Plaintiff, <br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. 3:24-CV-5508-DWC <br><br> ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff filed this action under 42 U.S.C. § 405(g) seeking judicial review of Defendant's denial of his application for supplemental security income benefits ("SSI").[1] After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred by incorporating a provision in Plaintiff's residual functional capacity ("RFC") that was not supported by substantial evidence in the record. The ALJ's error is, therefore, not harmless, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner of Social Security ("Commissioner") for further proceedings consistent with this order.

---

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 4.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 1

### I. Factual and Procedural History

Plaintiff protectively filed a claim for SSI on August 11, 2020, alleging disability beginning on November 30, 2019. Dkt. 5, Administrative Record ("AR") 222–37. His application was denied at the initial level and on reconsideration. AR 89, 120. He requested a hearing before an ALJ, which took place on May 24, 2023. AR 47–86, 146–48. Plaintiff was represented by counsel at the hearing. *See* AR 47. At the hearing, Plaintiff amended his alleged onset date to August 11, 2020. AR 23, 54. On June 16, 2023, the ALJ issued an unfavorable decision denying benefits. AR 20–46. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1–6, 219–21; *see also Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). Plaintiff appealed to this Court. *See* Dkt. 1.

### II. Standard of Review

When reviewing the Commissioner's final decision under 42 U.S.C. § 405(g), this Court may set aside the denial of social security benefits if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

"[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115.

### III. Discussion

Plaintiff contends the ALJ erred by including a provision in the RFC that was not supported by substantial evidence in the record and at step five of the sequential evaluation by accepting testimony from the vocational expert ("VE") that was not supported by substantial evidence. Dkt. 7 at 1. He contends the proper remedy for these errors is remand for further administrative proceedings. *Id.*

Plaintiff first argues the ALJ erred by including a provision in the RFC that was not supported by substantial evidence. In determining a claimant's RFC, the ALJ must assess all the evidence in the record to determine the most a claimant can do in a work setting despite their limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). "It is incumbent on the ALJ to make specific findings so that the court need not speculate as to the findings." *Sackett v. Berryhill*, No. 2:17-CV-00223-GWF, 2019 WL 1787337, at *10 (D. Nev. Apr. 24, 2019) (citing *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)).

In his written decision, the ALJ found Plaintiff's mental conditions constituted a severe impairment at step two of the sequential analysis but found they did not meet or equal the criteria of a listing at step three. AR 25–26. In making this determination, the ALJ found Plaintiff had a marked limitation in his ability to interact with others; that is, "a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis." AR 26–27.

Despite his limitations, the ALJ found Plaintiff had the RFC to perform light work with certain additional caveats. AR 28. The ALJ specifically addressed Plaintiff's interaction with others, writing: "During all periods of initial training, the claimant may have frequent contact with supervisors and coworkers. Thereafter, the claimant may have occasional and superficial contact with supervisors and coworkers. The claimant should have no contact with the public."[2] *Id.*

Plaintiff argues substantial evidence does not support the ALJ's finding that Plaintiff's ability to tolerate social interaction would be better during training periods. Dkt. 7 at 4. In *Leitz v. Kijakazi*, the Ninth Circuit rejected a similar "training-period caveat" in the RFC allowing additional interaction time for training despite otherwise limiting Leitz to occasional interaction with supervisors. No. 22-35356, 2023 WL 4342114, at *2 (9th Cir. Jul. 5, 2023) (unpublished). In that case, the Ninth Circuit found the caveat was not supported by substantial evidence because the ALJ provided no explanation of the evidentiary basis for the provision and the Court found "no evidence in the record which indicates that Leitz's mental problems are somehow alleviated during training periods because they are less likely to include supervisor interactions than other work periods, or that employers would be willing to tolerate her limitations during training periods." *Id.*

Here, the ALJ's only explanation for the supposed variation in Plaintiff's ability to interact with others appears to be found within the ALJ's evaluation of prior administrative findings from psychological consultant Thomas VanHoose, Ph.D. AR 34. Based on his review of the evidence, Dr. VanHoose found Plaintiff had moderate limitations in his ability to interact with others. AR 110. He specifically noted moderate limitations in Plaintiff's ability to interact

---

[2] "'Occasionally' means occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5. "'Frequent' means occurring from one-third to two-thirds of the time." *Id.* at *6.

appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. AR 115. Dr. VanHoose wrote Plaintiff could interact appropriately with supervisors, coworkers, and the public on a superficial basis. AR 116. He did not give any specific opinion regarding any change in Plaintiff's ability to interact with others appropriately during an initial training period. *See* AR 110–16.

The ALJ found Dr. VanHoose's assessment "mostly persuasive." AR 34. In doing so, the ALJ remarked specifically on the RFC's limitations on interactions with others:

> To the extent Dr. VanHoose's limitations vary somewhat from the less restrictive interaction limitations in the residual functional capacity during initial training periods, the inconsistencies discussed earlier regarding the claimant's past reports of conflict with his supervisor and receiving a restraining order from a former partner, and mental status findings noting a cooperative demeanor and average eye contact support these lesser limitations.

AR 34–35. Earlier in the decision, the ALJ wrote that "inconsistencies in the claimant's portrayals of past conflicts with others weigh[ed] against his allegations of extreme difficulty interacting with others," citing examples of Plaintiff's inconsistent descriptions of an altercation with a former manager and a claim to a therapist that he had been served with a restraining order by his ex-wife that he later recanted. AR 31. But it is not clear how any inconsistencies in Plaintiff's statements would support the varying levels of tolerance for social interaction outlined in the RFC, especially as the ALJ found more serious limitations in Plaintiff's ability to interact with others than those opined by Dr. VanHoose. *Compare* AR 26–27 (ALJ finding marked limitations), *with* AR 110, 115 (Dr. VanHoose finding moderate limitations). The ALJ's duty to "set forth" his reasoning "in a way that allows for meaningful review," *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015), requires building an "accurate and logical bridge from the evidence to [the ALJ's] conclusions." *Michael D. v. Comm'r of Soc. Sec.*, No. 2:22-CV-464-

- 5

1 | DWC, 2022 WL 4377400, at *3 (W.D. Wash. Sept. 22, 2022) (quoting *Blakes v. Barnhart*, 331

2 | F.3d 565, 569 (7th Cir. 2003)). Because the ALJ failed to explain the relationship between

3 | Plaintiff's allegedly inconsistent statements and the ALJ's finding that Plaintiff could tolerate a

4 | higher level of social interaction during training periods, the Court cannot determine whether any

5 | inconsistencies in Plaintiff's statements would support the varying levels of tolerance for social

6 | interaction outlined in the RFC.

7 |       The ALJ also cited to four mental status examinations, which purportedly showed

8 | "cooperative demeanor and average eye contact," in support of the less restrictive interaction

9 | limitations during initial training periods. AR 34–35 (citing AR 516, 599, 776, 854). The first

10 | cited record, from August 24, 2020, noted Plaintiff's behavior as cooperative, but described his

11 | eye contact as "other" with no further explanation. *See* AR 506, 516–17. The provider also

12 | observed Plaintiff's affect as irritable. AR 516.

13 |       The second cited record was from a telephonic psychological evaluation dated July 28,

14 | 2021. AR 595. In the mental status examination, the evaluator noted Plaintiff's attitude and

15 | behavior as cooperative and his mood as nervous. AR 599. Plaintiff's eye contact was not

16 | assessed. *See* AR 598–99. The evaluator noted Plaintiff's speech was generally regular, logical,

17 | and linear, but became fast and full of expletives when discussing instances of reported abuses,

18 | including interactions with his supervisor at his last job. AR 598.

19 |       The third cited examination took place at a psychiatric evaluation on December 16, 2021.

20 | AR 772. Plaintiff's demeanor was described as open and cooperative, and his eye contact was

21 | average. AR 776. His mood was noted to be irritable, and the evaluator recorded Plaintiff's

22 | comments that he had been in many past fights, quoting his comment that, "The last time I got in

a fight I was homeless, downtown, and some guy looked at me funny, and that was all it took." AR 777.

The final cited examination took place on February 23, 2022. AR 853. Plaintiff's appearance was described as disheveled, but eye contact was not specified. AR 854. His behavior was described as "Appropriate to circumstance, Cooperative, Restless," and his mood was anxious and agitated. *Id.*

Of these mental status examinations cited by the ALJ, all four describe Plaintiff as cooperative, but they also describe him as irritable, nervous, or agitated. Only one notes average eye contact. The ALJ does not explain why he found Plaintiff's cooperative behavior with providers and a single mention of adequate eye contact more significant than Plaintiff's irritability and agitation. The ALJ's failure to address this evidence is error. *See Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) (finding an ALJ must not "cherry-pick" certain observations without considering their context).

The ALJ's error was not harmless. At the hearing, the VE identified jobs in the national economy that could be performed by a hypothetical individual with Plaintiff's age, education, and work experience, as well as the limitations described in the RFC, except that the hypothetical allowed for only occasional and superficial contact with supervisors and coworkers with no distinction for training. AR 74–75. When asked about the training period for these jobs, the VE said the training would likely last one to two days and would likely involve frequent contact with supervisors or coworkers. AR 78–79, 83–84. The VE testified that an individual who could only tolerate interaction with coworkers or supervisors for up to one third of the time (that is, occasionally, *see* SSR 83-10, at *5) may not be capable of completing the training period for the identified jobs. AR 79–80.

"Hypothetical questions posed to a VE must 'set out *all* the limitations and restrictions of the particular claimant[.]'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *Russell v. Sullivan*, 930 F.2d 1443, 1445 (9th Cir. 1991)). "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (quoting *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)). Because the VE's testimony indicated Plaintiff may not be able to complete the training period for the identified jobs without the unsupported provision in the RFC, this error may have affected the ultimate disability determination. Therefore, the error was not harmless, and remand is required.[3]

## IV. Conclusion

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled beginning August 11, 2020. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 20th day of December, 2024.

David W. Christel
United States Magistrate Judge

---

[3] Because the Court finds reversible error, it need not address Plaintiff's other arguments.

- 8